# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTINA BRIGGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 2:13CV78NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.[1]** | ) | |

## MEMORANDUM AND OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Christina Briggs (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 17). Defendant has filed a brief in support of the Answer. (Doc. 21). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 18).

## I.
## PROCEDURAL HISTORY

On January 24, 2011, Plaintiff filed her application for SSI, alleging a disability onset date of December 28, 1976. (Tr. 111). Plaintiff's applications were denied and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 68-70). In August 2012, a hearing was held before an ALJ. (Tr. 27-48). In a decision dated August 23, 2012, the ALJ found Plaintiff

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

not disabled.  (Tr. 11-21).  Plaintiff filed a request for review with the Appeals Council, which denied Plaintiff's request on July 10, 2013.  (Tr. 1-5).  As such, the ALJ's decision is the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589;

Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider the following factors.  They are:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir.1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).  "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship

between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See

also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)).  The ALJ need only acknowledge and consider those factors.  See id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible.  See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180.  Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally

sufficient reasons.  See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled.  See Onstead, 962 F.2d at 804.  Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position.  See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was thirty-five years old at the time of the hearing, testified that she graduated high school; she lived with her mother and her two children aged twelve and seventeen year old; she was being treated for depression and borderline personality disorder at the Arthur Center; some days she was "so depressed" that she did not "want to function"; on those days she was not able to go out in public; this happened about one week out of a month; two or three times a week, she cut herself and pull her hair out when she had problems with depression or stress; and she had trouble concentrating and would forget what she was doing during these depression spells.  (Tr. 31-34).  Plaintiff also testified she suffered from arthritis and fibromyalgia; she could not lift, twist, bend, or lay flat because of muscle spasms; she had psoriasis on her face and scalp; her psoriasis got worse when she was under stress; she was diagnosed with hepatitis in March 2011; she could not take certain dosages of medication for her depression and borderline personality disorder because of the Hepatitis; she had problems in the

past with abusing prescription medication but the hepatitis led to her stopping the abuse; she abused alcohol in the past and had not had a drink since the prior New Year's Eve, when she had one drink; and her daughter who had post-traumatic stress disorder (PTSD) received disability. (Tr. 35-40).

The ALJ found Plaintiff had not engaged in substantial gainful activity since her application date; she had the severe impairments of fibromyalgia, major depressive disorder, generalized anxiety disorder, and personality disorder; and she did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ further found Plaintiff had the RFC to perform light work as defined by the regulations, except that she was limited to simple and routine tasks, where she would not be required to communicate with the general public on behalf of her employer. The ALJ concluded that given Plaintiff's age, education, work experience, and RFC, there was work in the national economy which Plaintiff could perform and that, therefore, she was not disabled.

Plaintiff contends the ALJ's credibility determination is not supported by substantial evidence, and that the ALJ's RFC determination is not based on substantial evidence because he gave greater weight to the opinion of the state agency evaluator, Margaret Sullivan, Ph.D., than to the opinion of Nurse Practitioner Pascha Boyd and her collaborating psychiatrist, Dr. Ahmed Taranissi. As for the ALJ's credibility determination, Plaintiff only challenges the ALJ's conclusion that Plaintiff's frequent non-compliance with medical advice detracted from her credibility.

## A.  Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including

Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).

Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354

F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the ALJ's credibility determination is based on substantial evidence.

The ALJ considered that Plaintiff was "frequently non-compliant with taking her medications, in that she typically stopped taking medications within a couple of weeks of the initial prescription." (Tr. 17). When a claimant is noncompliant with recommended treatment and follow-up, the ALJ may find the claimant's subjective complaints of disabling-level impairments non-credible. See Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2009); Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001) (noncompliance properly noted as part of credibility analysis). See also Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments). In regard to Plaintiff's non-compliance, records reflect that in June 2009, Plaintiff neglected to present for a prescribed blood draw. (Tr. 261). In October 2009, Plaintiff forgot to present for x-rays of her lumbar and cervical spines. Consequently, when Plaintiff presented for follow-up for her back pain and carpal tunnel syndrome, on October 7, 2009, a nurse concluded that Plaintiff was non-compliant. (Tr. 258). Nurse Practitioner Harry Stevenson's impression, on November 12, 2009, included "[n]oncompliance with treatment of care prescribed" and "malingering," among other things. It was also noted on this date that Plaintiff had been prescribed Lamisil for dermatitis, but that she "stopped after seven days, and did not finish it, did not keep the follow-up appointment with Dermatology, [and] did not contact Dermatology." (Tr. 257). On April 9, 2010, Plaintiff said she stopped taking one medication because she was frightened by how it made her think. (Tr. 365). On July 28, 2010, Nurse Practitioner Andrea Earlywine, of the

Arthur Center, reported that Plaintiff's mother was in charge of Plaintiff's pain pills because Plaintiff would take too many pills or would forget to take her medication. (Tr. 364).

On October 25, 2010, Nurse Earlywine reported that Plaintiff asked for something to help her sleep; when Oleptro was suggested, Plaintiff stated that she was "ambivalent about taking newer meds"; she asked for anxiety medication, although she appeared sluggish, which was noted to be inconsistent with anxiety symptoms; Plaintiff had asked for Xanax "on a recurrent basis"; Nurse Earlywine suspected Plaintiff "[might] be seeking benzos, despite the fact that [they] [had] discussed repeatedly and extensively in the past that these are indicated only for short-term use and not in combination with opiate pain meds"; when Nurse Earlywine suggested that Plaintiff be referred for support services because she had psychosocial stressors, Plaintiff refused; she also refused individual therapy, stating it "would be just one more thing to stress over." (Tr. 360). On November 24, 2010, Plaintiff reported that she stopped taking Oleptro after two weeks because it made her "too sedated." (Tr. 356).

Although Plaintiff was advised not to drink alcohol due to her hepatitis, she reported, on May 4, 2011, that she had been "drinking a lot recently." (Tr. 393). Plaintiff also admitted at the hearing that she abused prescription medications prior to her hepatitis diagnosis in March 2011. (Tr. 37-38). On October 20, 2011, Plaintiff reported that she doubled her dose of Prozac on her own, without her doctor's advice. (Tr. 435). In January 2012, she stopped taking Thorazine because she thought it was "messed with her heart," without consulting her cardiologist. (Tr. 441).

Plaintiff admits that records used the terms "noncompliance" and "malingering," but argues that she was actually only forgetful due to her mental disorder, and that she had trouble finding medications that did not cause her too many side effects. (Doc. 17 at 20-22). While the

court notes that a claimant's mental illness may provide good reason for her failure to follow medical advice, cf. Pate-Fires v. Astrue, 564 F.3d 935, 946 (8th Cir. 2009), Plaintiff's own medical care providers used the terms "non-compliance" and "malingering," not just the ALJ; Plaintiff does not explain why she did not follow-up and why she refused treatment as recommended; and Plaintiff has presented no evidence that her non-compliance was excusable because her medical conditions rendered her forgetful, see Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2009) (poor compliance with diet properly cited as a credibility factor; despite plaintiff's mental disorders, there was no evidence she did not understand the importance of compliance). Thus, the court finds, despite Plaintiff's claim to the contrary, that the ALJ properly considered her non-compliance with medical advice. As discussed above, Plaintiff does not challenge the ALJ's consideration of factors other than Plaintiff's non-compliance upon reaching the conclusion that Plaintiff was not entirely credible. The court, however, will consider additional credibility factors.

First, on occasion, Plaintiff reported that her medications helped. Conditions which can be controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002). For example, on October 26, 2011, Plaintiff told Nurse Boyd that medication helped when she was agitated and it "definitely stop[ped] the anger." (Tr. 435). On January 25, 2012, she told Nurse Boyd that Prozac was helping, and on March 28, 2012, Plaintiff said her increased Prozac helped a lot. (Tr. 441, 447). In June 2012, Plaintiff reported that she continued

to "do well" with treatment, and that she was positive about starting a new relationship over the internet. (453).

Second, although Plaintiff testified that she cut herself and pulled out her hair two to three times a week (TR. 35), Plaintiff's medical records reflect that she had a history of self-mutilation when she was younger, but that she specifically denied any self-harm during the relevant period. (Tr. 19, 441-42, 447, 454).

Third, as considered by the ALJ, despite Plaintiff's claim of disabling mental conditions, medical records reflect that Plaintiff was alert and oriented, with logical thought content and no delusions. (Tr. 357, 361-62, 436-37, 442-43, 447-48, 454-55). She also made appropriate eye contact and had fair insight and judgment (Tr. 357, 396); her affect was appropriate (Tr. 361, 390, 436); and she had normal speech and logical flow of thought (Tr. 361, 436). Although an ALJ may not disregard a claimant's subjective allegations because they are not fully supported by objective medical evidence, an ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002)); 20 C.F.R. § § 404.1529(c), 416.929(c).

Fourth, as considered by the ALJ, Plaintiff's daily activities were "not what one would expect given her allegations of totally disabling symptoms and limitations." (Tr. 19). In this regard, Plaintiff testified that she spent her days caring for the daily needs of herself and her two school-aged children. She admitted that she cooked meals regularly and did chores around the house, including dishes and laundry. Plaintiff reported that she helped her children with their homework, took her children to school-related activities, and could pay her bills, handle bank accounts, count change, shop for groceries and other items needed by her children once or twice

a month, watch television "a lot," and use a computer to play video games and puzzles. She also said she drove around town as needed. Plaintiff further reported that she could walk for a quarter mile before needed to rest, and follow written instructions "just fine" as she was "not stupid." (Tr. 156-63). Additionally, Nurse Boyd reported, on August 25, 2012, that Plaintiff said she met a man on the internet; they developed a great friendship; she completed a "value questionnaire," ostensibly to determine compatibility; and the questionnaire required her to answer 130 questions. (Tr. 453). See Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). "Inconsistencies between [a claimant's] subjective complaints and [her] activities diminish [her] credibility." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Even though Plaintiff's daily activities might not have been totally consistent with full-time work, they at least suggest that her limitations were not as drastic as she claimed. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (credibility factors included that claimant

"was not unduly restricted in his daily activities, which included the ability to perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with the use of an electric cart."); Clevenger v. Soc. Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009) (despite mixed signals in caselaw, it is appropriate for the ALJ to cite activities as part of the credibility assessment).

**B.    Weight Given to Medical Opinions:**

As stated above, Plaintiff argues that the ALJ erred in giving greater weight to the opinion of Dr. Sullivan than to the opinion of Nurse Boyd and her collaborating psychiatrist, Dr. Taranissi.  On a form, completed on April 27, 2012, Nurse Boyd opined that Plaintiff's abilities to make occupational adjustments in regard to following work rules, relating to co-workers, dealing with the public, using judgment, and maintaining attention/concentration was fair to poor or none.  Her ability in regard to interacting with supervisors, dealing with work stresses, functioning independently, understanding, remembering and carrying out complex instructions and detailed but not complex instructions was poor or none.  Nurse Boyd also reported that Plaintiff was poorly organized and had "ingrained personality features that severely limit[ed] her coping" and she was completely precluded from "behaving in an emotionally stable manner." (Tr. 433-34).  On July 31, 2012, Dr. Taranissi completed a form indicating he and Nurse Boyd collaborated on Plaintiff's treatment; he reviewed her April 27, 2012 assessment; and he agreed with Nurse Boyd's clinical impression.  (Tr. 459).

Acknowledging that Nurse Boyd's assessment was endorsed by Dr. Taranissi, the ALJ stated that he gave little weight to Nurse Boyd's opinion because the limitations imposed by Nurse Boyd on Plaintiff "appear[ed] grossly overstated and [were] not consistent with [Plaintiff's] mental status examinations, which largely reflect that [Plaintiff] had fair insight and

judgment, and no memory deficits." See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."); Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."). The ALJ also considered that limitations imposed by Nurse Boyd were contrary to Plaintiff's admissions that she was doing better, and establishing new friendships. (Tr. 18).

Upon choosing not to give controlling weight to Nurse Boyd's and Dr. Taranissi's opinions, the ALJ noted several reasons why Nurse Boyd may have opined as she did. The ALJ noted that it was possible that a doctor may express an opinion "in order to assist a patient with whom he sympathizes for one reason or another." The ALJ also noted that "patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might satisfy their patients requests and avoid unnecessary doctor/patient tension." (Tr. 18).

The ALJ gave greater weight to the opinion of Dr. Sullivan, rather than that of Nurse Boyd and Dr. Taranissi. Dr. Sullivan reviewed the record, including Plaintiff's treatment notes, and concluded that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures, to understand and remember very short and simple instructions, to carry out very short and simple instructions, to perform activities within a schedule, maintain regular attendance, and be punctual, to sustain ordinary routine without special supervision, and to work in coordination with or proximity to others without being distracted by them. Dr. Sullivan further opined that Plaintiff was moderately limited in regard to understanding and remembering detailed instructions, carrying out detailed instructions, and maintaining attention and concentration for extended periods. (Tr. 370-71). Upon giving greater weight to Dr. Sullivan's

opinion, the ALJ noted that her opinion was more consistent with Plaintiff's treatment notes, and that it took into account evidence of Plaintiff's malingering and drug seeking behavior. (Tr. 18).

First, as discussed above in regard to Plaintiff's credibility, the record supports the ALJ's conclusion that observations of medical providers, including Nurse Boyd, contradict the extent of the limitations suggested by Nurse Boyd and affirmed by Dr. Taranissi. See Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009) ("An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence.").

Second, to the extent that the ALJ considered possible motivations of Nurse Boyd and Dr. Taranissi in supporting Plaintiff's claim for disability, the ALJ's decision does not suggest that he drew any positive conclusions in this regard, or that he relied on these reasons when giving greater weight to Dr. Sullivan's opinion. Rather, the ALJ's opinion suggests that he relied on the record as a whole, most specifically Plaintiff's medical records and his credibility findings, when he decided to give greater weight to Dr. Sullivan's opinion than to that of Nurse Boyd and Dr. Taranissi. Arguably, when the ALJ considered possible motivations he was merely fulfilling his role to resolve conflicts in the record. See Hudson v. Barnhart, 345 F.3d 661, 667 (8th Cir. 2003) (citing Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir. 1995) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (internal citations omitted); Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000) (discussing an ALJ's role in resolving conflicts among medical opinions); 20 C.F.R. § 416.927(d) (2003) (outlining how medical opinions are to be weighed)).

Third, the issue for this court is whether the record as a whole supports the ALJ's determination, see Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008); Senne v. Apfel, 198 F.3d

1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."), and the court concludes that the record as a whole supports the ALJ's determination that Nurse Boyd's and Dr. Taranissi's opinions, as expressed on the forms they completed, do not reflect medical findings and that their opinions are inconsistent with the ALJ's credibility determination, which itself is supported by substantial evidence, see Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008) (arguable deficiencies in decision writing do not require court to set aside ALJ's administrative finding when deficiencies have no bearing on outcome); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996).

Fourth, at least one federal court has noted that it is well known that there are physicians who are likely to "bend over backwards to assist a patient in obtaining benefits." Hofslein v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).

Fifth, the opinions of treating doctors are given controlling weight only where they are supported by medically acceptable techniques and where they are not inconsistent with other substantial evidence. See Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). An ALJ need not give controlling weight to a treating doctor's opinion where the limitations imposed by the doctor were never mentioned in his or her treatment notes or supported by any explanation. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007). Most significantly, a treating doctor's opinion need not be given controlling weight when it is inconsistent with that doctor's treatment notes. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). Thus, as the opinions expressed by Nurse Boyd and Dr.

Taranissi were inconsistent with Plaintiff's treatment records, the ALJ was not required to give their opinions controlling weight.

Sixth, to the extent Nurse Boyd and Dr. Taranissi indicated that Plaintiff was disabled by checkmarks on a form, a treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan, 239 F.3d at 961; SSR 96-2p. See also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011) (holding that checkmarks on a Medical Source Statement are "conclusory opinions" which can be discounted if contradicted by other objective medical evidence); Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) ("'The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value'. ... Indeed, '[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.'") (quoting Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) and Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996)).

Seventh, as a State agency consultant, Dr. Sullivan is highly trained qualified expert in Social Security disability evaluations. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence). As with other medical sources, the Regulations required the ALJ to give good reasons to explain the weight given to Dr. Sullivan's opinion. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). The ALJ complied with this requirement, as discussed above.

Finally, the ALJ gave good reasons for failing to give controlling weight to Nurse Boyd's and Dr. Taranissi's opinions, see King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (ALJ is not

bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, or diagnostic evidence), and, in any event, the ALJ did give extensive consideration to Nurse Boyd's and Dr. Taranissi's treatment notes, see Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions."). Indeed, the ALJ accounted for some limitations suggested by Nurse Boyd and Dr. Taranissi when determining that Plaintiff had the RFC to perform light work, except that she was limited to *simple and routine tasks, where she would not be required to communicate with the general public on behalf of her employer.* The court finds that the ALJ gave proper weight to Nurse Boyd's and Dr. Taranissi's opinions and that his decision, in this regard, is based on substantial evidence. The court further finds that the ALJ's RFC determination is based on substantial evidence and consistent with the record as a whole.

Only after determining Plaintiff's RFC did the ALJ pose a hypothetical to a VE which described a person of Plaintiff's age and with her work experience, education, and RFC. The VE testified that there was work in the national economy, existing in significant numbers, which Plaintiff could perform. These jobs included cafeteria attendant, small-products assembler, and housekeeper. Relying on the VE's testimony, the ALJ found Plaintiff not disabled. The court finds that the ALJ's ultimate finding that Plaintiff was not disabled is based on substantial

evidence.  See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations).

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 17.

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum and Opinion.

Dated this 17th day of September, 2014.

 /s// Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE